## SNOWDEN *v.* THE UNITED STATES.

CRIMINAL LAW; EVIDENCE; RES GESTÆ; RAPE.

1. In criminal cases, and especially in cases of rape and in cases of abuse of female children, the principle of what is called the *res gestæ* will of necessity be extended beyond the limits that obtain generally in civil cases.

2. No inflexible rule as to the length of interval between the act charged against an accused and the declaration of the complaining party, can be laid down as established to bring the declaration within the principle of the *res gestæ*.

3. In a prosecution of a defendant for the rape of a child about five years and a half old, the statements of the child of the particulars of the outrage made to her grandmother at a time during the same day when the condition of the child showed that the outrage had been recently committed and testified to by the grandmother, are admissible as part of the *res gestæ*.

No. 277.   Submitted December 14, 1893.—Decided December 21, 1893.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, holding a criminal term, upon a verdict of guilty in a prosecution for rape. *Affirmed.*

The COURT in its opinion stated the case as follows:

A child, Marie Smith, about the age of five and a half years, was brutally assaulted and outraged, in an attempt to perpetrate a rape upon her, on or about the 12th of August last, in this District. The appellant, William Snowden, a colored man, was indicted for the crime, and has been tried and convicted; and from the judgment of the court upon the verdict of the jury, he has appealed to this court.

The question presented on the appeal arises upon the ruling of the court below, in allowing certain statements of the child made to her grandmother, shortly after the assault was committed, to be given in evidence to the jury, which inculpated the accused.

By the exception taken at the trial it is shown that Marie
Smith, on the 12th of August, 1893, was a child of about
five and a half years of age; that she was at the time staying
with and was under the care of her grandmother, Mrs. Mary
E. Dove; that the grandmother attended to and dressed and
bathed the child while in her care; that the grandmother re-
sided on Benning's road, in the District of Columbia, near
by her daughter, Mrs. Dewey; and being employed in the
Government Printing Office, she was generally away from
her house, attending to her duties at the printing office dur-
ing the day; but during her absence the child was left at
home in charge of a colored girl, named Georgiana Snow-
den, a servant of Mrs. Dove; that on the day of the alleged
commission of the crime, according to the testimony of Mrs.
Dove, she left the child with the servant girl, when she went
to her work in the morning, and, at that time, the child was
well and had no appearance of bruises or other evidence of
violence about her private parts; but, upon return to her
home on the evening of that day, about half-past four
o'clock, she found the child lying on the parlor floor alone,
crying, the servant girl, Snowden, being in the kitchen—the
parlor being in the front part of the house, and the kitchen
in the rear. The witness, Mrs. Dove, asked the child,
Marie, what was the matter, and the reply was, that she was
sore and could not walk; that thereupon Mrs. Dove imme-
diately made an examination of the person and clothing of
the child, and found her very much bruised and swollen
about the private parts, and there was a slimy substance on
her and on her clothing, some of which was dry and some of
it still in a liquid state. That the witness, at the time of such
examination, made further inquiry of the child, as to what
had happened to her, and the reply of the child was that
Snowden, the appellant, had taken her up in the loft of Mrs.
Dewey's stable that day while it was raining, pulled up her
clothes, and laid down on her, and tried to put something
inside of her, and used his hands and fingers, and told her
not to tell, and he would give her candy. The witness

thereupon went to the stable, which was on the back part of the lot upon which her daughter, Mrs. Dewey, lived, and found the appellant, and told him what the child, Marie, had said, and asked him why he had done such a thing, and the appellant's reply was, "You did not see it; you have got to prove it." Evidence was given to show that it did rain on that day, between the hours of 1 and 3.30 o'clock P. M.

The child, Marie, was produced in court as a witness, and after being examined by the judge, as to the degree of her intelligence and understanding, was pronounced competent to be a witness; but, when on the stand to testify, neither the counsel for the prosecution nor for the defense could succeed in getting any statement from her as to the circumstances of the crime. The child shrank from the examination, hid her face, and refused to answer the questions put to her. The only thing that she could be induced to say was, that she remembered her grandmother coming home and finding her lying on the parlor floor crying.

*Mr. Thomas L. Jones* for the appellant:

1. The declarations of Marie Smith to Mrs. Mary F. Dove were not competent evidence. After Marie Smith had been sworn, it was perfectly competent for the prosecution to prove by her that she made complaint immediately after the alleged occurrence, but her declarations without oath to establish the body of the offense cannot be received in evidence, it being hearsay. Phil. Ev., 18–20. 3 Greenleaf on Ev., Sec. 213, says: In *People* v. *Meyers*, 19 L. R., 543, in the Supreme Court of California, 1885, the declarations of the prosecutrix were, "I told her (meaning her sister) that he was hiding in the bushes like a dog. I also told her that I was afraid, and asked where I should go. She said, 'Stay where you are. He will not hurt you where I am.' When I was crying, he said, 'Hush up your mouth and go to the house. Do you see this pistol? If you tell anybody this I will kill you.'" The court said: "The rule is to admit evidence of the fact of complaint in all cases, and in no case

to admit any more; the evidence when restricted to this extent is not hearsay, but in the strictest sense original; when, however, these limits are exceeded it becomes hearsay in a very objectionable form." The declarations were rejected. See also Roscoe on Crim. Ev., 24; Russ. on Crimes, 688; *People* v. *McGee*, 1 Denio, 19; *Stevens* v. *State*, 11 Ga., 225; Wharton's Crim. Law, Sec. 1150; *Rupt* v. *State*, 6 L. R. p. 541; Russ. on Crimes, 689, 690; 9 Humph., 249. The declarations of the deceased as to who wounded him and how he was wounded made five minutes after the infliction of the wound at a place to which he had escaped, is not evidence as a part of the *res gestæ*. 38 L. R. p. 630.

In the *State* v. *Seymour*, 4 L. R., p. 548, it was held that declarations, on an indictment for assault and battery with intent to murder, made within two or three minutes of the commission of the act, but not on the scene, but after the defendant had fled two or three hundred yards and halted in a neighboring yard, cannot be given in evidence in his own behalf as part of the *res gestæ*.

2. The declarations in the case at bar were admitted on the decision of the *Insurance Co.* v. *Mosley*, 8 Wall., 397, which decision was based upon *Commonwealth* v. *M'Pike*, 3 Cush., 181; *Thompson* v. *Trevanion*, Skin. 402, and *R.* v. *Foster*, 6 C. & P., 325; but it will be observed that *Commonwealth* v. *M'Pike* has been practically overruled by the subsequent cases of *Lund* v. *Tyngsborough*, 9 Cush., 41; *Chapin* v. *Marlborough*, 9 Gray, 244; *Commonwealth* v. *Densmore*, 12 Allen, 535; *People* v. *A. H. Lee*, 60 Cal., 85; also see *Kendrick* v. *State*, 55 Miss., 436; *Craner* v. *State*, 61 Miss., 158.

3. Where declarations offered in evidence are merely narratives of a past occurrence they cannot be received as proof of the existence of said occurrence. 1 Greenleaf on Ev., 110. An act cannot be varied, qualified or explained either by a declaration, which amounts to no more than a mere narrative of a past occurrence, or by an isolated conversation held or an isolated act done at a later period. 1 Taylor on

Ev., 53; *Corinth* v. *Lincoln,* 34 Me., 312; *Noyes* v. *Ward,* 19 Conn., 269; *Moore* v. *Meacham,* 10 N. Y., 210; *Osborn* v. *Robbins,* 37 Barb., 482; *Sessions* v. *Little,* 9 N. H., 271; *Paige* v. *Cogwin,* 7 Hill, 361; *Booth* v. *Swezey,* 4 Selden, 276; *Tousley* v. *Barry,* 16 N. Y. Rep., 497; *Enos* v. *Tuttell,* 3 Conn., 250; *Russell* v. *Frisbie,* 19 Conn., 209; *Carter* v. *Beals,* 44 N. H., 412; *Price* v. *Powell,* 3 N. Y., 322; *Ridley* v. *Dyde,* 9 Bing., 351; *Right* v. *Tathan,* 5 Clark and Finnelly, 670; also see Clifford's dissenting opinion in *Insurance Co.* v. *Mosley,* 8 Wall., 397.

*Mr. A. A. Birney,* United States Attorney, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The exception taken was *only* to the admissibility of the statements of the child made to the grandmother, and by the latter repeated to the jury as primary and independent evidence. There was no exception taken to the admission in evidence of the statements of the child, which were repeated by the grandmother to the accused, shortly after the occurrence, and which elicited the reply that "You did not see it; you have got to prove it." These declarations, both of the child and of the accused, were admitted together; the declarations of the one to be considered in connection with the declarations or implied admissions of the other. That they were competent evidence there can be no doubt. When reproached for the commission of the offense, with a statement to the accused of what the child had said, if he had been innocent, it is but natural to presume that he would at once have attempted to refute the charge, and vindicate himself by explicit denial, instead of the evasive and defiant answer given by him.

But was the statement of the child made to the grandmother, as to the particulars of the offense, and criminating the accused, admissible as evidence *per se,* as being part of

what is generally designated as *res gestæ*, or as being of the nature of *res gestæ?* Upon careful consideration of the facts of this case, we are clearly of opinion that such statement was admissible as evidence *per se*.

The question as to what constitutes *res gestæ* has been the subject of a great diversity of decision. Indeed, the phrase itself, as said by Mr. Justice Stephen, in his Digest of Evidence (Am. Ed.), 250, seems to have come into use on account of its convenient obscurity. In criminal cases, and especially in cases of rape, and in cases of abuse of female children, the principle of what is called the *res gestæ* has been, *from necessity of the case*, extended beyond the limits that obtain generally in civil cases. This difference in the application of the principle is recognized by this court in the recent case of *Railroad Co.* v. *Collins*, 1 App. D. C., 383. Indeed, as has been well asserted, no inflexible rule as to the length of interval between the act charged against the accused and the declaration of the complaining party, can be laid down as established. In all such cases, the particular facts of each case must stand alone, and speak for themselves, as evidential means of proof of the crime charged. The general rule observed, in the trial of cases of rape, or attempts to commit that offense, has been, no doubt, to inquire of the prosecuting witness, whether she had made ·complaint of the outrage upon her, recently after the occurrence of the crime, without requiring her to state the particulars of the offense, leaving it to the defense, on cross-examination, to bring out the particulars of the complaint, if desired. But this is not an invariable rule. Mr. Justice Stephen, in his Digest of the Law of Evidence (Am. Ed.), page 251, says: "I have heard Willes, J., rule that such statements of the particulars were admissible on several occasions, vouching Parke, B., as his authority. *Reg.* v. *Walker*, 2 M. & R., 212, a case referred to, was decided by Parke, B., in 1839; and though he excluded the statement, he said: ' The sense of the thing certainly is, that the jury should, in the first instance, know the nature of the com-

plaint made by the prosecutrix and all that she then said. But for reasons which I never could understand, the usage has obtained that the prosecutrix's counsel should only inquire generally whether a complaint was made by the prosecutrix of the prisoner's conduct towards her, leaving the prisoner's counsel to bring before the jury the particulars of that complaint by cross-examination.'" "Lord Justice Bramwell," says the author, "was in the habit, during the latter part of his judicial career, of admitting the complaint itself. The practice is certainly in accordance with common sense." And in verification of this statement of Mr. Justice Stephen, himself a high authority upon the subject, we have the case of *Reg.* v. *Wood*, 14 Cox, Cr. Cas., 46, tried before Lord Justice Bramwell, in 1877. In that case the prisoner Wood was charged with committing a rape upon a female, and the statement of the full particulars of the complaint she made against him to other persons in his absence, some time after the alleged offense, was allowed to be given in evidence against the accused. It is true, in that case, the female was examined and testified to the facts of the transaction; but the Lord Justice said he did not see why the whole statement made by the girl, recently after the occurrence, should not be given in evidence, leaving it to the jury to judge of the value of such testimony. See, also, *Reg.* v. *Eyre*, 2 F. & F., 579, and *Reg.* v. *Reardon*, 4 F. & F., 76.

But, as applied to other cases than rape, or attempts to commit rape, where the declarations or statements of the injured party are sought to be introduced, the principle of the *res gestæ*, as it is called, would seem to be sufficiently comprehensive to allow of the admission of the evidence excepted to in this case.

In the case of *Rex* v. *Foster*, 6 C. & P., 325, before Mr. Justice Park, Mr. Justice Patteson and Mr. Baron Gurney, A was charged with manslaughter in killing B, by driving a cab over him. C saw the cab drive by, but did not see the accident, and immediately afterwards on hearing B groan C

went up to him, when B made a statement as to how the accident had happened; and it was held, that this statement was admissible as part of the *res gestæ*.   Mr. Justice Park said that the evidence ought to be received; that it was the best possible evidence, under the circumstances, that could be adduced to show what it was that had knocked the deceased down.   The other judges concurred.

In this country, the decisions are not uniform, some applying the principle with greater strictness than others.  But there are many decisions of courts of the highest authority, in which the principle of the *res gestæ* has been applied with the same, if not greater, comprehensiveness as applied in the English courts.   Especially is this so in the administration of the criminal law.   Thus, in the case of the *Com.* v. *M'-Pike*, 3 Cush., 181, where the defendant was charged with manslaughter in killing his wife, a witness was allowed to testify that the wife, just before her death, told him that the defendant, her husband, had stabbed her; and this statement of the wife was made to the witness after a sufficient interval of time to permit the deceased, after receiving the wound, to go up stairs and dispatch a messenger for a doctor, and then to allow the witness to go after a watchman, return to the house and go up stairs to the room of the wounded woman, where the declarations were made by her, criminating her husband.   These declarations were characterized by the court as being " of the nature of *res gestæ*," and therefore admissible as evidence.

In the case of *Ins. Co.* v. *Mosley*, 8 Wall., 397, a civil action, the question of the admissibility of declarations or statements of a party insured, as to the manner in which he received an injury, made some time thereafter, was carefully considered by the Supreme Court of the United States; and in holding the declarations admissible, the court say, that where the principal fact is the fact of bodily injury, the *res gestæ* are the statements of the cause, made by the injured party almost contemporaneously with the occurrence of the injury, and those relating to the consequences made while

the latter subsisted and were in progress.  In that case, the case of *Rex* v. *Foster, supra* and *Com.* v. *M'Pike, supra,* are cited and relied on as authorities.  The court declare, moreover, that the tendency of recent adjudications is to extend rather than to narrow the scope of the doctrine; and that rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results.

In the case of *People* v. *Brown,* 53 Mich., 531, the question arose in the case of a party indicted for rape.  The statements or answers made by the girl two or three days after the commission of the alleged crime were held to be admissible.  In the opinion of the court, such statements were to a certain extent to be regarded as parts of the *res gestæ,* which in rape cases, include such accounts of the recent crime as might reasonably be expected from the injured female.  And that case is supported by reason and authority.

In the case before us, the crime, as usual, was perpetrated in secret; and, as in all such cases, is most difficult to prove, except by the testimony of the victim of the outrage.  Of the fact that the child had been outrageously abused, there can be no doubt; and from the indications about her person, and the other circumstances stated in the bill of exceptions, the conclusion is natural and reasonable that, at the time her condition was first discovered by her grandmother, the outrage had been but recently committed.  On the return of the grandmother the child was found lying on the floor crying.  She was then suffering from the injuries inflicted on her person, and it was then and there that she made the statement of the particulars of the outrage upon her, in which the appellant was charged as being the perpetrator of the wrong.  In our opinion, the statement of the child made to the grandmother under the circumstances, was part of the *res gestæ,* and that it was properly admitted in evidence.

It follows that the judgment must be affirmed.

*Judgment affirmed and cause remanded that judgment be executed.*